In re R & L FURNITURE COMPANY, INC., (EIN 72–0960027), Debtor.

Jack Patrick HARRIS, Trustee, Plaintiff,

v.

David A. AKCHIN, Defendant.

In re COMMERCIAL HELICOPTERS, INC., (EIN 72–0858326).

Bankruptcy Nos. 84–00117, 84–00523. Adv. No. 84–0085.

United States Bankruptcy Court, M.D. Louisiana.

May 10, 1985.

Jack Patrick Harris, Baton Rouge, La., pro se.

Henry T. Graham, Jr., St. Amant, La., for David A. Akchin.

Whit M. Cook, II, Baton Rouge, La., for Commercial Helicopters, Inc.

David S. Rubin, Baton Rouge, La., for Federal Deposit Ins. Corp.

## MEMORANDUM OPINION

WESLEY W. STEEN, Bankruptcy Judge.

This memorandum explains the reasons for a judgment entered in adversary number 84–0085, *Jack Patrick Harris vs. David A. Akchin,* and also explains the reasons for an order disposing of a motion entered in Case No. 84–00523, *In re Commercial Helicopters, Inc.;* the latter is a motion of the Federal Deposit Insurance Corporation seeking an order modifying the automatic stay with respect to property subject to chattel mortgage. Both cases involve La.R.S. 9:5352 regarding the statutory requirements for a chattel mortgage.

Separate orders are entered in the two cases; this opinion explains the reasons for those orders.

### I. Louisiana Chattel Mortgages: La.R.S. 9:5351 et seq.

La.R.S. 9:5351 states that "... it shall be lawful ... to mortgage any and every kind of movable property, materials ... or other things in bulk, but changing in specifics ... even though the same may not be all of a similar nature or kind." La.R.S. 9:5352 then establishes the requirements for a chattel mortgage; it must:

A. Be in writing;

B. Describe the obligation secured and the exact (or maximum) sum secured;

C. State the due date or state that the obligation is due on demand;

D. Meet the following requirements for description of the property:

1. Bulk Mortgage—If a mass or assemblage of things is involved, the document must state the location at which the mass or assemblage will be kept and must describe the mortgaged property as either:

(a) "all of a particular class or classes or grade or kind or type or species or dimensions" or

(b) "as a stock of merchandise".[1]

2. Mortgages on particular pieces of property—If the mortgaged property is *not* a mass or assemblage of things, "... a full description of the property ... shall be set forth so that it may be identified ...", and the location must be specified, but failure to state the location does not affect the validity of the mortgage.

In summary, and specifically addressing the requirements related to property descriptions and location, there are two kinds of chattel mortgages: First, a mortgage may be granted on nonspecific property (*i.e.,* "in bulk"); there are two types of such bulk mortgages: a mortgage on property within a common class or classes,

---

1. Careful reading of the statute suggests that masses or assemblages must be similar in class, grade, kind, type, species, or dimensions unless the mass constitutes a stock of merchandise. A stock of merchandise at a particular location apparently may consist of dissimilar items.

grade, kind, type, species, or dimensions; and a mortgage on a "stock of merchandise."[2] Second, a chattel mortgage may be granted over specifically described property.

The statutory construction is confusing regarding the requirement that the document state the location of property which is the subject of a bulk mortgage. It is possible to conclude that the location requirement only applies to inventory bulk mortgages, but it is also possible to conclude that the location must be specified for both kinds of bulk mortgages. The parallelism of the sentence construction leads to the first conclusion, as follows: the document is required to describe the property "as all of a particular class, grade, *etc.*," "*or as* a stock of merchandise to be kept at a certain location." [Emphasis supplied.] The inclusion of the additional conjunction "as" before "stock of merchandise" seems to imply that the parenthetical phrase "to be kept at a certain location" modifies the term "stock of merchandise" rather than modifying all of the types of masses or assemblages of things.

However, the other interpretation seems more reasonable. First, location specificity is a method of identifying the property to which the mortgage applies; there would appear to be no reason why such specificity would apply to inventory but not to other masses or assemblages. Second, the language of both § 5351 and in § 5352 indicates that the inventory mortgage is merely a type of bulk mortgage; since "bulk mortgage" is the category, and since no other differentiation applicable to documentary requirements is apparent within that category, the location specificity requirement in § 5352 is probably intended to apply to the entire category and not merely to a particular subset of the category. The distinction appears to be made between the two categories themselves; thus, it appears that the specification of a location is not mandatory for a mortgage of specifically described property, but is vital for the validity of a bulk mortgage.

While the statute provides that failure to specify location is not fatal to a mortgage of specifically described property, the jurisprudence indicates that specification of the wrong location is fatal;[3] The same conclusion regarding location specificity would appear to apply *a fortiori* to bulk mortgages, since location specificity is a statutory requirement.

These conclusions can be applied to the cases at issue as follows.

## II. The R & L Furniture Company, Inc., Mortgage

■ On October 10, 1983, Durl W. and Fay Raines granted a chattel mortgage on the following property:

"Any and all property of a business or personal nature belonging to Durl W. and/or Fay Raines, or R & L Furniture Co., Inc. including but not limited to

---

2. La.R.S. 9:5352(A) reads specifically as follows: "A. Every chattel mortgage shall be in writing and the obligation secured thereby shall be described and the exact sum secured thereby shall be stated, or, if the same is to secure future advances, then the maximum amount thereof shall be stated, and there shall also be stated whether the same be payable on demand or what fixed or determinable future time. A chattel mortgage granted on any mass or assemblage of things, including without limitation, stocks or merchandise in retail, wholesale, or manufacturing establishments, permitted by R.S. 9:5351, whether owned at the time of execution of the mortgage or to be acquired thereafter and on such additions as may come from natural increase or otherwise, shall describe the same as all of a particular class or classes or grade or kind

or type or species or dimensions or as a stock of merchandise to be kept at a certain location. In all other cases a full description of the property to be mortgaged shall be set forth so that it may be identified and its location shall be stated; provided, that the failure to recite the location of the chattel shall not affect the validity of the mortgage."

3. *Auto Paint & Co., Inc. v. Hale,* 408 So.2d 346, 351 (La.App. 3rd Cir.1981). The court stated "On the other hand, if the mortgage document purports to provide an accurate and complete description of the mortgaged property, good faith third party purchases need not make further inquiry." See also *Williams v. Miller,* 160 So. 165 (La.App. 2nd Cir., 1935) and *In re Exclusive Industries Corporation.*

property located at 11218 Airline Hwy. Baton Rouge, La. 70816."

Obviously, this is not a mortgage of specific property. But neither does it appear to be a bulk mortgage. Clearly this is not a description of "a stock of merchandise to be kept at a certain location"; while the property at the stated address might *include* such a stock of merchandise, this is not a description of a stock of merchandise as required by the statute. Neither is this a description of "all of a particular class or classes or grade or kind or type or species or dimensions" of property; this is a description of *all* property, not any specified subset, particular or otherwise.

There is no authority in La.R.S. 9:5351 simply to mortgage all of one's property. This mortgage is not valid against the Trustee. The Trustee shall submit an order so holding and relegating the Defendant's claim to unsecured status.

### III. Commercial Helicopters, Inc.

■ On December 2, 1982, the Debtor granted a collateral chattel mortgage covering property described as shown in Exhibit A. There was no location specified, but the mortgage stated that the Debtor would not remove the property from East Baton Rouge Parish. In fact, the property was not then or subsequently located in East Baton Rouge Parish. The mortgage was recorded in East Baton Rouge Parish and also in Lafayette Parish, where the majority (and perhaps all) of the property was located.

This mortgage is not a valid bulk mortgage for two reasons. First, it fails to specify a location; if the agreement not to remove the property from East Baton Rouge Parish constitutes the specification of a location, then the specification is wrong. Second, the descriptions do not indicate that "all" of the class, type, *etc.* of a class of property is mortgaged. Thus, the description states "Misc. Tools"; a valid mortgage would necessarily state *"all"* tools of a certain description.

■ Neither does this document constitute a valid mortgage of property specifi-cally described. No data is given that would constitute "... a full description of the property ... so that it may be identified."

Most of the property is described only in vague, generic terms, *viz:* "Lathe", "Radio Test Set", Tools", "Misc. Tools", "Lawn Mower", "Sheet Metal Equipment." A bulk mortgage might have been possible; for example, the document might have been written to mortgage "All of the aircraft engine repair tools, all of the lawn mowers ... located at (address), Lafayette, Louisiana." But the Debtor did not do so. The agreement to keep the property in East Baton Rouge Parish is no help to the mortgagee; to the extent that the mention of East Baton Rouge Parish constitutes the designation of a location of the property, it is the wrong location.

There are a few items in the list that are more specifically described, but still insufficiently to meet the statutory criteria. Some of these items appear to be items of a parts inventory: for example, "Wulfburg Kits C–119" and "Electrical Fuel Tank Hookup." There was no showing that the items included in the December, 1982, list were the same items that are now found in the premises. In addition, some of the descriptions are less specific than they might seem at first. For example, the seven "Electrical Fuel Tank Hookup[s]" on the list range in "Amount" from $359 to $7,347. One would conclude that these items are more dissimilar than their descriptions would suggest.

There are no brand names, dimensions, sizes, weights, manufacture or acquisition dates, model numbers, operating speed or other performance data, serial numbers, color designations, power specifications, location specifications, or other data to assist in identification of the property. There was no showing that the (apparently fungible, expendable) property listed generically in 1982 was the same as property of similar generic characteristics on hand in 1985. Such proof and such documentation is simply inadequate.

Relief from the § 362 stay is denied for failure to demonstrate a security interest in the property. The objection to the sale is denied for the same reasons.

EXHIBIT A

| ITEM | AMOUNT |
|---|---|
| Wulfburg Kits C–119 | $ 1,841.94 |
| Lathe | 2,468.00 |
| Bolt Sander | 1,190.38 |
| 1 RT LS 10 1961—Tool | 2,229.48 |
| Wulfburg Kits C–19 | 1,108.76 |
| Toni Boards—Tool | 1,382.27 |
| Radio Test Set | 16,951.00 |
| Tools—Special | 9,060.00 |
| Tools | 2,734.93 |
| Tools | 8,075.00 |
| Lawn Mower | 1,260.00 |
| Air Conditioner | 1,474.89 |
| Blade Balancer | 4,748.74 |
| Sandblaster on Wheels | 2,235.00 |
| Wulfburg Radio w/antenna | 6,821.85 |
| Septic Tank at ICY | 3,047.25 |
| Sewer & Water System | 5,145.00 |
| Fuel Tank Pelican Island | 3,035.90 |
| Tools | 3,134.12 |
| Misc. Tools | 1,311.23 |
| Misc. Tools | 17,600.54 |
| Misc. Tools | 21,310.20 |
| Electrical Fuel Tank Hookup | 534.00 |
| Fuel Tank | 2,755.19 |
| Electrical Fuel Tank Hookup | 1,977.11 |
| Electrical Fuel Tank Hookup | 1,039.51 |
| Electrical Fuel Tank Hookup | 4,074.59 |
| Electrical Fuel Tank Hookup | 359.99 |
| Electrical Fuel Tank Hookup | 7,346.85 |
| Electrical Fuel Tank Hookup | 2,164.52 |
| Fuel Tank | 9,424.26 |
| Antenna installed | 2,913.45 |
| Computer Disk | 3,093.30 |
| Computer Disk | 11,172.15 |
| 12000 Gal. Offshore Fuel System | 3,000.00 |
| Fire Ext. Equipment | 838.59 |
| Fire Ext. Equipment | 793.71 |
| 2 Fluid Container Covers—Fuel Tanks | 991.03 |
| 4 in. 41–43 Radios w/kits | 304.41 |
| 12000 Gallon Fuel Skid Tank | 8,468.25 |
| RT–15–10 Tranceiver w/kits | 2,563.91 |
| RT–19–0 Tranceiver w/kits | 2,084.00 |
| Misc. Drive | 527.00 |
| 12000 Gallon Fuel Tank | 8,468.25 |
| TOT Indicator Gauge | 425.00 |
| 2 Life Rafts | 2,491.35 |
| Antenna Kit Galveston | 438.57 |
| 2 FM Remote Control Units | 2,305.80 |
| Lawn Mower | 1,016.44 |

| ITEM | AMOUNT |
|---|---|
| 2 Basic Rafts | $ 2,494.31 |
| 2 Septic Tanks/Inst. | 1,321.72 |
| Teledyne Navigator | 10,228.40 |
| Tank/Inst. | 1,200.00 |
| 8000 Gallon Tank Rep./Maint. | 1,512.62 |
| 2 Aux. Power Units | 2,500.00 |
| Torque Wrenches | 1,718.07 |
| Fuel Tank Pump | 643.44 |
| Fire Ext. | 741.74 |
| Antenna w/System Galveston | 536.22 |
| Sheet Metal Equipment | 8,664.00 |
| Studs & Stuff | 1,500.00 |
| Teledyne Micro-Navigator | 12,734.92 |
| Radio Control Console | 10,918.96 |
| Computer Equipment | 1,050.00 |
| Fuel Inst. Parts | 1,000.00 |
| 2000 Gal. Fuel/Tank w/skid | 1,902.00 |
| 550 Gal. Marine Port Tank | 17,295.60 |
| 4 RT-19-10 Radio w/kits | 8,876.00 |
| Special Air Tools | 32,605.31 |
| Link Trainers | 5,000.00 |
| 2000 Gal. Skid Tank | 2,835.84 |
| Petty Cash Tickets | 1,346.72 |
| 2 HP Fuel Pump | 1,438.00 |
| 2 550 Gal. Fuel Transporters | 6,000.00 |
| 2000 Gal. Fuel Skid Tank | 2,835.84 |
| WCS 200 Tranc & Micro | 2,976.10 |
| RT 19-10 Radio | 2,382.94 |
| Flite Phone 40 w/system | 1,175.94 |
| 2000 Gal. Skid Tank | 2,027.00 |
| Tub Liners | 1,941.62 |
| Transceiver with Kits | 5,285.72 |
| Torque Wrench Calebrator (sic) | 4,742.22 |
| Misc. Kell Strom Tools | 4,333.00 |
| Small Aircraft Computers | 1,276.63 |
| Radar Altimeter | 4,186.00 |
| Steel Tank 2500 Gallon | 4,500.00 |
| Tubliners | 1,132.59 |
| Lamarch Battery Chargers | 2,001.12 |
| Flite Phones | 2,121.42 |
| Offshore Pump | 892.50 |
| Life Raft and Life Vests on H | 49,992.34 |
| Shelf Rack and Stand | 1,022.18 |